UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARL CHAMPNEY,

     Plaintiff,

v.                                Case No:   2:15-cv-511-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Carl A. Champney's Complaint (Doc. 1) filed

on August 25, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying his claim for a period of disability,

disability insurance benefits, and supplemental security income.  The Commissioner filed the

Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page

number), and the parties filed legal memoranda in support of their positions.  For the reasons set

out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).[1]

### I.    Social Security Act Eligibility, the ALJ's Decision, and Standard of Review

#### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

---

[1] Plaintiff moved "the Court to enter summary judgment."  (Doc. 26 at 1).  Nevertheless, this Court's role in social security matters is governed by 42 U.S.C. § 405(g).  Accordingly, the standard of review pursuant to 42 U.S.C. § 405(g) is set forth in this Opinion and Order.

death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On December 31, 2012, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of December 31, 2012.  (Tr. at 148, 152).  Plaintiff's applications were denied initially on February 19, 2013 (Tr. at 62, 63), and upon reconsideration on March 27, 2013 (Tr. at 86, 87).  A video hearing was held before Administrative Law Judge ("ALJ") Troy M. Patterson on March 28, 2014.  (Tr. at 27-44).  The ALJ issued an unfavorable decision on May 19, 2014.  (Tr. at 8-24).  The ALJ found Plaintiff not to be under a disability from December 31, 2012, through the date of the decision.  (Tr. at 19).

On July 9, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-7). Plaintiff filed a Complaint (Doc. 1) in this Court on August 25, 2015.  Defendant filed an Answer (Doc. 16) on November 18, 2015.  The parties filed Memoranda in support.  (Docs. 26, 27).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 20).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

In this case, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017.  (Tr. at 13).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2012, the alleged onset date.  (Tr. at 13).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  seizure disorder, diabetes mellitus with polyneuropathy, and degenerative disc disease.  (Tr. at 13).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 15).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work.  (Tr. at 15).  Specifically, the ALJ stated:

---

[2] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; and must avoid exposure to work hazards such as dangerous machinery and unprotected heights.

(Tr. at 15).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. at 18). The ALJ stated that the vocational expert ("VE") "classified the claimant's past relevant work as painter (DOT 840.381-010, medium, SVP 7) and drywall hanger and finisher (DOT 842.684-014, medium, SVP 6)." (Tr. at 18).[3] The ALJ stated that Plaintiff "cannot perform his past relevant work because it exceeds the light exertion level." (Tr. at 18).

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 18). Specifically, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC "would be able to perform the requirements of representative occupations such as checker, counter, or tallier (light, unskilled) with approximately l,500 jobs in Florida and 85,000 jobs in the nation; and marking clerk (light, unskilled) with approximately 5,000 jobs in Florida and 280,000 jobs in the nation." (Tr. at 19).

The ALJ found the VE's testimony to be consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 19). Further, the ALJ found that "the jobs identified by the vocational expert constitute a significant number of jobs in the regional and national economies." (Tr. at 19). Therefore, based on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is "capable of making

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation code.

a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 19). Accordingly, the ALJ stated that a finding of "not disabled" was appropriate. (Tr. at 19). The ALJ concluded that Plaintiff was not under a disability from December 31, 2012, through the date of the decision. (Tr. at 19).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.      Analysis

On appeal, Plaintiff raises three issues:

(1) The residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ failed to consider the medical opinion evidence, in accordance with 20 C.F.R. §§ 404.1527, 416.927; Social Security Ruling ("SSR") 06-03p, which indicated Plaintiff was unable to perform work at any exertional level on a regular and continuing basis.

(2) The ALJ's credibility assessment of Plaintiff is not supported by substantial evidence because the ALJ improperly penalized Plaintiff for not producing a treating source statement to corroborate his testimony and equated mundane activities of daily living and recreation undertaken by the Plaintiff with substantial gainful activity, in violation of 20 C.F.R. §§ 404.1529, 416.929.

(3) The RFC is not supported by substantial evidence because it does not account for limitations arising from all of Plaintiff's medically determinable impairments, including myasthenia gravis and neuropathy, and does not fully and accurately account for the combination of severe and nonsevere impairments, as required by 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.

(Doc. 26 at 2-3).  The Court addresses each of these issues in turn.

### A. Plaintiff's Comprehensive Vocational Evaluation

The first issue raised by Plaintiff concerns the weight given to the opinion of Mr. Rios and Dr. Rothard by the ALJ after they performed a comprehensive vocational evaluation ("CVE") of Plaintiff.  (Doc. 26 at 7).

#### 1.  Arguments

Plaintiff argues the RFC assessment is not supported by substantial evidence because the ALJ failed to consider the medical opinion evidence in accordance with 20 C.F.R. §§ 404.1527, 416.927, and SSR 06-03p.  (Doc. 26 at 7-11).  Specifically, Plaintiff alleges that the ALJ erred in discrediting the opinion of Mr. Rios and Dr. Rothard for two reasons.  (*Id.*).

First, Plaintiff argues that even though Mr. Rios' and Dr. Rothard's opinion cannot be treated as an "acceptable medical source" for establishing the existence of a medical impairment,

their opinion should be considered "important" based on their training, expertise, and experience as vocational rehabilitation professionals as required by SSR 06-03p.  (Doc. 26 at 8).  Plaintiff argues that "[b]ased on the brevity, vagueness, and inaccuracy of the ALJ's analysis, it is evident he did not believe their evaluation to be important as contemplated by SSR 06-03p."  (*Id.*). Accordingly, Plaintiff argues that the ALJ "failed to apply the regulatory factors set forth in 20 C.F.R. §§ 404.1527, 416.927, because he did not consider the expertise of the examiners nor the consistency of the evaluation with the other evidence of record."  (*Id.* at 11).

Second, Plaintiff states that the ALJ's finding that the opinion of Mr. Rios and Dr. Rothard was "not based on Plaintiff's medical impairments and functional limitations" is "patently inaccurate."  (Doc. 26 at 11 (citing Tr. at 17)).  Plaintiff argues that Mr. Rios and Dr. Rothard "reviewed the medical evidence of record" and made findings based on that record. (*See id.*).  Plaintiff argues that "[t]he analysis provided by the ALJ is a gross misrepresentation of the record and cannot be found to be supported by substantial evidence."  (*Id.*).  Accordingly, Plaintiff contends that "[b]ecause the opinion provided by Dr. Rios and Dr. Rothard was well-reasoned and consistent with the objective medical evidence, the error committed was harmful." (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's decision to give little weight to the opinion of Mr. Rios and Dr. Rothard regarding Plaintiff's functional limitations and vocational abilities.  (Doc. 27 at 4).  Defendant first argues that because the opinions of Mr. Rios and Dr. Rothard are not medical opinions, they are not entitled to any special significance or consideration.  (*Id.* at 5).

Additionally, Defendant argues that the opinions of Mr. Rios and Dr. Rothard included findings that are reserved for the Commissioner.  (Doc. 27 at 5).  Defendant contends that "[a]n

opinion on an issue reserved for the Commissioner, regardless of the source, is not a medical opinion and is not due any special significance or evaluation." (*Id.* at 6 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p; *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013); *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986))).

Further, Defendant argues that the information Mr. Rios and Dr. Rothard included in the examination "was not a recitation of objective exam findings but instead a mere list of diagnoses and notations of Plaintiff's subjective reports about what he could and could not do." (Doc. 27 at 6). Defendant argues that "[a] report that merely repeats the assertions of a patient the ALJ does not find credible is not objective medical evidence and should not receive significant weight." (*Id.*).

Finally, Defendant contends that the opinions expressed in the CVE "are inconsistent with other substantial evidence in the record." (*Id.*). Thus, Defendant contends that "[s]ubstantial evidence supports the ALJ's RFC finding and decision to give little weight to the CVE, and Plaintiff failed to prove he had limitations beyond those for which the RFC finding accounted." (*Id.*).

## 2. *Legal Standard*

According to the relevant regulations, medical evidence can be provided by "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). As Plaintiff noted, the Social Security Administration issued a ruling discussing "other sources" in SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). In that ruling, the Agency stated:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and

evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* The Agency further stated that the "case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p, 2006 WL 2329939, at *6. Specifically, an ALJ "should explain the weight given to opinions from these 'other sources.'" *Id.*

Nevertheless, an ALJ has no duty to give significant or controlling weight to "other sources." *See Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) (citing 20 C.F.R. § § 404.1513, 416.913, 404.1527(a)(2)). In fact, even under the Agency's interpretation of its regulations, an ALJ is not required to accept conclusions from sources designated as "other sources" and may place appropriate weight on the evidence based upon the medical evidence of record. *See* SSR 06-03p, 2006 WL 2329939, at *4; *see also Naylor v. Astrue*, No. 2:09-cv-844-FTM-DNF, 2011 WL 972508, at *7 (M.D. Fla. Mar. 18, 2011).

Furthermore, opinions on whether a claimant is "disabled" or unable to work are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). No special significance is given to the source of an opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Denomme*, 518 F. App'x at 878; *Hutchinson*, 408 F. App'x at 327.

### 3. Analysis

As an initial matter, the opinion of Mr. Rios and Dr. Rothard appears to be properly classified as an "other source." Neither party disputes this contention. Additionally, the Court

notes that the ALJ assigned little weight to the opinion of Mr. Rios and Dr. Rothard.  By assigning a weight to their opinion, the ALJ complied with SSR 06-03p in that he explained "the weight given to opinions from these 'other sources.'"  2006 WL 2329939, at *6.

The ALJ provided two reasons for affording the opinion little weight.  (Tr. at 17).  First, the ALJ stated that Mr. Rios and Dr. Rothard are not "acceptable medical sources."  (Tr. at 17). Second, the ALJ stated that Mr. Rios and Dr. Rothard "based their opinion on the fact the claimant enjoys woodworking and refinishing and restoring antique furniture in his small woodworking shop in the shed behind his house, not on the claimant's medical impairments and functional limitations."  (Tr. at 17).

In evaluating this issue, the Court notes that an ALJ has no duty to give significant or controlling weight to "other sources."  *See Miles*, 469 F. App'x at 745; 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); SSR 06-03p.  Accordingly, the Court finds that the ALJ did not err in giving Mr. Rios and Dr. Rothard's opinion little weight based on its status as an "other source."

Further, although SSR 06-03p provides factors for evaluating the opinions of "other sources," the ruling states that an ALJ *can* use those factors, not that he *must*.  *See* SSR 06-03p, 2006 WL 2329939, at *4-5; *see also Wilson v. Astrue*, No. 3:11-cv-153-J-TEM, 2012 WL 1060147, at *7 (M.D. Fla. Mar. 29, 2012) ("While the Regulations direct the factors in 20 C.F.R. § 404.1527(d) *shall* apply to the evaluation of medical opinions from acceptable medical sources, the Social Security Administration has noted those same factors 'can' be applied to opinion evidence from other sources.").  Here, the ALJ was under no obligation to provide a written consideration of each factor as listed by the Social Security Ruling.

Furthermore, Plaintiff does not dispute a significant part of the ALJ's second reason for not giving more weight to the opinion of Mr. Rios and Dr. Rothard in that their opinion was based on "the fact the claimant enjoys woodworking and refinishing and restoring antique furniture in his small woodworking shop in the shed behind his house." (Tr. at 17). Instead, Plaintiff only argues that Mr. Rios' and Dr. Rothard's opinion is based on the medical evidence of record and that the ALJ erred in finding that the opinion of Mr. Rios and Dr. Rothard was not based on Plaintiff's "medical impairments and functional limitations." (Doc. 26 at 11).[4] Nevertheless, the Court agrees with Defendant's contention that Mr. Rios' and Dr. Rothard's opinion was heavily based on Plaintiff's subjective complaints, which the ALJ did not find credible. (Doc. 27 at 6). In this regard, the Court agrees with Defendant that a report that merely repeats the assertions of a patient that the ALJ does not find credible is not entitled to receive significant weight. (*Id.*).

Regardless, many of the conclusions in Mr. Rios' and Dr. Rothard's opinion – *e.g.*, that Plaintiff's needs are "too great for regular employee status" and the only feasible option available to Plaintiff is working at home part time as a furniture refinisher – are opinions on issues reserved for the Commissioner and, thus, are not entitled to great weight. *See Denomme*, 518 F. App'x at 878; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) ("A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled.").

Accordingly, upon consideration of the parties' positions and the reasons given by the ALJ, the Court finds that the ALJ did not err in affording little weight to the opinion of Mr. Rios and Dr. Rothard.

---

[4] The Court discusses the ALJ's credibility findings in Part II.B., *infra*.

**B. Credibility Assessment**

The second issue raised by Plaintiff concerns the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible. (Tr. at 15). Plaintiff argues that the ALJ's credibility assessment is not supported by substantial evidence. (Doc. 26 at 11-12). The Commissioner, however, argues that the ALJ applied the proper legal standards in evaluating Plaintiff's credibility and that substantial evidence supports the ALJ's finding. (Doc. 27 at 7).

*1. Legal Standard*

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, in reviewing credibility, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the

claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

### 2.  *Plaintiff's Testimony and the Medical Record*

Plaintiff first alleges that the ALJ incorrectly "discredited Plaintiff based on his interpretation that the 'medical records and clinical presentations' are purportedly inconsistent with the presence of a disabling impairment." (Doc. 26 at 12). Specifically, Plaintiff argues that, in examining the medical record evidence, the ALJ disregarded reports of sharp pains in Plaintiff's legs and severe pain and numbness in his arms and hands. (*Id.* (citing Tr. at 407, 453)). Further, Plaintiff points to physical therapy notes that indicate problems with trunk stabilization and Plaintiff's lower extremities. (*Id.* at 13 (citing Tr. at 525)). Moreover, Plaintiff states that he "reported progressive weakness in his extremities rendering him unable to stand for long periods of time." (*Id.* (citing Tr. at 602). Finally, Plaintiff argues that "[t]he fact that Plaintiff had to change medications and dosages on several occasions and continually reported severe pain symptoms to his physician suggests that his symptoms were not under good control." (*Id.*). Thus, Plaintiff argues that "[i]t is error for the ALJ to solely focus on examination results

and records that support his conclusion without acknowledging the record of treatment that supports Plaintiff's allegations." (*Id.*).

Defendant disagrees, pointing to numerous medical records cited by the ALJ supporting a finding that Plaintiff was not entirely credible. (Doc. 27 at 8-9). Defendant further argues that "Plaintiff failed to meet his burden of providing evidence to support his allegations of disabling limitations." (*Id.* at 10). Thus, Defendant argues that "[t]he ALJ properly considered all the relevant evidence in assessing the credibility of Plaintiff's allegations and properly fulfilled the fact-finding duty to weigh and resolve conflicts in the evidence." (*Id.*).

In this case, the Court finds that substantial medical evidence of record supports the ALJ's assessment that Plaintiff was not entirely credible. For example, the Court notes that the ALJ considered the pain and numbness in Plaintiff's legs, arms, and hands. (Tr. at 16). In doing so, the ALJ referenced treatment records from December 2012 and January 2013 indicating reduced foot pain and normal gait, stance, and monofilament testing. (Tr. at 16 (citing Tr. at 385, 490, 495)). Further, the ALJ recognized that medical records from April 2013 and June 2013 showed improvements in Plaintiff's diabetes and polyneuropathy as well as decreased numbness and tingling in the legs. (Tr. at 16 (citing Tr. at 589, 609)). Moreover, during a June 2013 examination, Plaintiff stated that he had "no pain or problems with his feet." (Tr. at 16 (citing Tr. at 581)). Additionally, at the end of June 2013, Plaintiff had decreased pinprick sensation in his hands but full hand grip powers and normal gait. (Tr. at 16 (citing Tr. at 520)).

Upon review, the above citations by the ALJ to the medical record of evidence provide substantial evidence supporting the ALJ's credibility finding. Moreover, these citations articulate clear reasons why the ALJ made his credibility finding as to Plaintiff. Additionally, the ALJ cited substantial medical evidence of record demonstrating that Plaintiff's testimony as

to his neck pain, back pain, and degenerative disc disease was not entirely credible.  (Tr. at 16).

Accordingly, because the ALJ clearly articulated his credibility finding with substantial

supporting evidence in the record, the Court declines to disturb the ALJ's credibility findings.

*See Foote*, 67 F.3d at 1562.

Moreover, while Plaintiff argues that (1) the ALJ disregarded reports of sharp pains in

Plaintiff's legs and severe pain and numbness in his arms and hands, (2) physical therapy notes

that indicate problems with trunk stabilization and Plaintiff's lower extremities, (3) a medical

record shows that he is unable to stand for long periods of time, and (4) "[t]he fact that Plaintiff

had to change medications and dosages on several occasions and continually reported severe

pain symptoms to his physician suggests that his symptoms were not under good control," the

question is not whether the ALJ could have reasonably credited Plaintiff's testimony, but

whether the ALJ was clearly wrong to discredit it.  *See Werner*, 421 F. App'x at 939.  In this

case, based on the ALJ's well-articulated reasons and citations to substantial contradictory

medical evidence of record, the Court cannot find that the ALJ was wrong to discredit Plaintiff's

testimony.

### 3. *Activities of Daily Living*

Plaintiff also argues that the ALJ erred in discrediting Plaintiff due to his "activities of

daily living."  (Doc. 26 at 13).  These activities, as mentioned by the ALJ, include fishing on a

regular basis, woodworking, and refinishing and restoring antique furniture.  (Tr. at 17).

Defendant disagrees, arguing that the ALJ properly considered these activities in

determining Plaintiff's credibility and resulting RFC.  (*See* Doc. 27 at 10).

In evaluating this issue, the Court notes that participation in daily activities of short

duration, such as housework or fishing, does not disqualify a claimant from disability.  *Lewis v.*

*Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  Nevertheless, a claimant's daily activities are a

factor for the ALJ to consider in determining credibility.  *See Moreno*, 366 F. App'x at 28; *see*

*also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

 In this case, the ALJ did not review Plaintiff's daily activities exclusively.  Rather, in

determining Plaintiff's credibility, the ALJ reviewed the medical records as a whole, including a

review of Plaintiff's daily activities.  (*See* Tr. at 15-17).  The ALJ's review of the daily activities

was only part of the evidence the ALJ considered in making his credibility determination.  (*See*

Tr. at 15-17).  Moreover, as discussed above, the ALJ clearly articulated other reasons why

Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms

were not entirely credible.  Thus, the ALJ rightfully considered Plaintiff's daily activities as part

of the record.  *See Moreno*, 366 F. App'x at 28; *see also* 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).  The Court, therefore, finds no error in the ALJ's consideration of Plaintiff's

activities of daily living as a part of the record in determining Plaintiff's credibility.

### 4. *Lack of Treating Medical Source Opinion*

 Finally, Plaintiff argues that the ALJ penalized him because he did not supply an opinion

from a treating source showing that he is more limited than was found by the ALJ.  (Doc. 26 at

13).  Plaintiff argues that "[t]his finding has no basis in the regulations and was not a proper

consideration."  (*Id.*).

 Defendant argues that "the ALJ merely noted that the record supported the RFC finding

and did not contain opinions contrary to that finding."  (Doc. 27 at 10).  Thus, Defendant

contends that "[t]he ALJ properly considered all the relevant evidence in assessing the credibility

of Plaintiff's allegations and properly fulfilled the fact-finding duty to weigh and resolve

conflicts in the evidence."  (*Id.*).

In this case, the Court finds that the ALJ did not improperly penalize Plaintiff for his failure to supply an opinion from a treating source showing that he is more limited than was found by the ALJ.  Instead, the Court agrees with Defendant that "the ALJ merely noted that the record supported the RFC finding and did not contain opinions contrary to that finding."  (Doc. 27 at 10).  Moreover, as stated above, the ALJ clearly articulated explicit and adequate reasons for discrediting Plaintiff's subjective testimony, as required by law.  *See Foote*, 67 F.3d at 1562.  Accordingly, the ALJ did not err in finding Plaintiff not entirely credible.

### C.  Plaintiff's Myasthenia Gravis and Neuropathy

The final issue concerns Plaintiff's allegations that additional limitations from his myasthenia gravis and neuropathy were not included in the RFC assessment and the hypothetical question posed to the VE.  (Doc. 26 at 14).

#### 1.  Arguments

Plaintiff argues that the ALJ failed to account for Plaintiff's limitations due to myasthenia gravis and neuropathy in formulating Plaintiff's RFC.  (Doc. 26 at 17).  Plaintiff contends, therefore, that this failure resulted in a hypothetical question posed to the VE that excluded Plaintiff's relevant limitations.  (*Id.*).  Thus, Plaintiff argues that the VE's testimony is not supported by substantial evidence and that the ALJ erred in relying on the testimony to deny the claim.  (*Id.*).

The Commissioner responds that the "ALJ properly considered Plaintiff's condition as a whole, including evidence regarding his allegations of eye and vision problems and his diabetic polyneuropathy problems in assessing his ability to work."  (Doc. 27 at 12).  Defendant contends that the ALJ noted substantial evidence in support of his findings.  (*Id.* at 13 (citing Tr. at 13-19)).  Further, Defendant argues that Plaintiff failed "to identify any evidence that deprives the

ALJ's findings of the support of the substantial evidence discussed in this brief and in the ALJ's decision." (*Id.*). Thus, because "Plaintiff cannot show his combined impairments, whether severe or not severe, prevented him from performing the reduced range of light work the ALJ found he could do," Defendant argues that "[s]ubstantial evidence supports the ALJ's findings and conclusion that Plaintiff was not disabled." (*Id.*).

Furthermore, Defendant argues that "[b]ecause the hypothetical fully accounted for Plaintiff's limitations, the VE's testimony was substantial evidence supporting the ALJ's decision. (*Id.* at 14). Thus, Defendant contends that "[t]o the extent Plaintiff argues the hypothetical was flawed because the ALJ did not develop the record properly or made other errors, Plaintiff has not shown the ALJ made any other errors, and substantial evidence supports the ALJ's RFC finding." (*Id.*).

### 2. *Legal Standard*

The RFC is the most a claimant is able to do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Moreover, in determining whether Plaintiff can return to his past relevant work, the ALJ must determine Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238-39; 20 C.F.R. § 404.1520(e). The ALJ must "specifically account" for all of a claimant's limitations in the RFC assessment and in hypotheticals to the vocational expert. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011).

An impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.1521(a). Nevertheless, an impairment that "significantly limits" a claimant's ability to work may have no effect on what work a claimant can do despite the claimant's

limitations. *Davis v. Comm'r of Soc. Sec.*, No. 6:12-cv-1694-ORL-36, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013) (20 C.F.R. § 404.1545(a)(2)).  In fact, this Court has stated that "the prevailing rule is that an ALJ does not err solely because she finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Davis*, 2013 WL 6182235, at *6.

This apparent inconsistency is explained by examining how an impairment may qualify as "severe" at step two.  *See Davis*, 2013 WL 6182235, at *6.  At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months.  *See* 20 C.F.R. §§ 404.1505(a), 416.905(a).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Accordingly, an impairment may meet this minimal definition of severity without materially affecting the claimant's RFC. *Davis*, 2013 WL 6182235, at *6.

Furthermore, according to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not. *Id.*  If any impairment or

combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

### 3. Myasthenia Gravis

Plaintiff argues that the ALJ improperly found that Plaintiff did not have myasthenia gravis "because a laboratory test known as the acetylcholine receptor binding antibody tests was negative." (Doc. 26 at 15).  Plaintiff contends that the ALJ misunderstood this test "to be an indication that Plaintiff 'did not have myasthenia gravis.'" (*Id.*).  Nevertheless, Plaintiff asserts that his treating physician, Dr. Mitchell Drucker, stated that "the acetylcholine receptor test is negative in fifty percent [50%] of myasthenia patients." (*Id.* at 16 (citing Tr. at 231)).  Plaintiff states that despite the negative test result, Dr. Drucker strongly felt "that Plaintiff has myasthenia gravis due to the positive response to Mestinon, as well as objective examination findings." (*Id.* (citing Tr. at 231)).  As a result, Plaintiff argues that the ALJ "impermissibly substituted his lay opinion as to the meaning of the acetylcholine receptor test and misinterpreted the results to the detriment of the Plaintiff." (*Id.*).  Thus, Plaintiff asserts that this error resulted in the ALJ failing to consider limitations resulting from myasthenia gravis in formulating the RFC and the hypothetical posed to the vocational expert. (*Id.* at 17).

Defendant, however, responds that "the ALJ found Plaintiff had severe physical impairments and proceeded to the next step in the sequential evaluation." (Doc. 27 at 11).  While "Plaintiff argues the ALJ should have included myasthenia gravis . . . among his severe impairments," Defendant argues that "diagnoses do not establish limitations." (*Id.*).  Defendant argues that the ALJ "properly considered Plaintiff's condition as a whole, including evidence regarding his allegations of eye and vision problems . . . in assessing his ability to work." (*Id.* at

12).  Defendant contends that Plaintiff failed to show that his eye and vision impairments caused additional limitations beyond those for which the ALJ accounted.  (*Id.* at 13).  Thus, Defendant argues that "[s]ubstantial evidence supports the ALJ's findings and conclusion that Plaintiff was not disabled."  (*Id.*).

In this case, the Court notes that the ALJ made a determination that Plaintiff suffered from a number of severe impairments including:  seizure disorder, diabetes mellitus with polyneuropathy, and degenerative disc disease.  (Tr. at 13).  Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe.  *See Heatly*, 382 F. App'x at 825.  Rather, the only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe.  *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe.  Specifically, in making his RFC determination, the ALJ stated that:

> the undersigned *has considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p.  The undersigned *has also considered opinion evidence* in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. at 15) (emphasis added).  Furthermore, the Court notes that the ALJ specifically considered Plaintiff's vision problems and myasthenia gravis.  (Tr. at 14).  In fact, the ALJ explicitly found that Plaintiff's vision impairments were non-severe.  (Tr. at 14).  Moreover, the record shows that the ALJ considered Plaintiff's vision impairments in his RFC determination.  (Tr. at 17).  Thus, regardless of whether the ALJ erred in his conclusion that Plaintiff's myasthenia gravis and vision impairments were non-severe, the record demonstrates that the ALJ considered

Plaintiff's myasthenia gravis and vision impairments in combination with Plaintiff's other impairments. Therefore, the ALJ applied the correct legal standard and did not err in failing to find that Plaintiff's myasthenia gravis and vision impairments are severe impairments, or if he did err, the error was harmless. *See Heatly*, 382 F. App'x at 825.

Furthermore, while Plaintiff claims the ALJ failed to consider limitations resulting from myasthenia gravis and vision impairments in formulating Plaintiff's RFC and the hypothetical questions posed to the vocational expert, (Doc. 26 at 16), the Court, nevertheless, finds that substantial evidence supports the ALJ's RFC assessment. The ALJ clearly addressed Plaintiff's myasthenia gravis and vision impairments and determined that the medical evidence undermined Plaintiff's claim of significant limitations. (Tr. at 14). Specifically, the ALJ cited repeated notations of Plaintiff having 20/20 vision with correction and reports of improved symptoms with medication. (Tr. at 14 (citing Tr. at 356, 620-21, 721)).

Moreover, while Plaintiff argues that the ALJ improperly found that Plaintiff did not have myasthenia gravis "because a laboratory test known as the acetylcholine receptor binding antibody tests was negative" (Doc. 26 at 15), Plaintiff has not shown that this diagnosis resulted in any additional limitations beyond those accounted for in the RFC. In this case, the Court finds that the ALJ cited substantial evidence that – even with the alleged diagnosis of myasthenia gravis – Plaintiff did not have any significant limitations that should be reflected in the RFC assessment.

Finally, because the ALJ's hypothetical question fully accounted for Plaintiff's limitations (*see* Tr. at 41-43), the VE's testimony was not harmed by the exclusion of any alleged eye and vision limitations. *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) for the

proposition that "[t]he ALJ is not required to include findings in a hypothetical to a vocational expert that the ALJ has found to be unsupported").  Accordingly, the ALJ did not err on this ground.

### 4.   Analysis Regarding Polyneuropathy

Plaintiff also contends that because the ALJ found that Plaintiff's polyneuropathy is a "severe impairment," the ALJ must include corresponding limitations.  (Doc. 26 at 17).  Plaintiff claims that the ALJ neglected to include any limitations in Plaintiff's upper extremities that were rationally related to Plaintiff's polyneuropathy.  (*Id.* at 17).  Accordingly, Plaintiff argues that this impairment must involve limitations that are included in the RFC and the hypothetical posed to the vocational expert.  (Doc. 26 at 17).

The Commissioner responds that although the ALJ found Plaintiff's polyneuropathy to be a "severe impairment," substantial evidence supports normal function in Plaintiff's extremities. (Doc. 27 at 13).  Specifically, Defendant states that the ALJ noted normal function, including notations of improvement of pain and numbness, full grip strength, and normal gait, stance, and monofilament testing.  (Doc. 27 at 12 (citing Tr. at 14-16, 385, 490, 495, 520, 581, 589, 609)). Further, Defendant argues that Plaintiff failed to show that his impairments caused additional limitations beyond those for which the ALJ accounted.  (*Id.* at 13).  Thus, Defendant contends that "[s]ubstantial evidence supports the ALJ's findings and conclusion that Plaintiff was not disabled."  (*Id.*).

In this case, the Court finds that substantial evidence supports the ALJ's RFC determination as to Plaintiff's polyneuropathy.  Specifically, while Plaintiff faults the ALJ for failing to include additional limitations from Plaintiff's polyneuropathy – an impairment classified as "severe" at step two – the Court notes that an impairment may be severe without

materially affecting the claimant's RFC.  *See Davis*, 2013 WL 6182235, at *6.  In fact, "an impairment that causes no independent limitations will not affect the RFC assessment."  *Id.*  Here, while the ALJ found Plaintiff's polyneuropathy to be a severe impairment, the ALJ pointed to substantial medical evidence of record showing normal function, including notations of improvement of pain and numbness, full grip strength, and normal gait, stance, and monofilament testing.  (Tr. at 14-16 (citing Tr. at 385, 490, 495, 520, 581, 589, 609)).  Thus, the ALJ did not err by failing to include additional limitations in Plaintiff's RFC assessment because substantial medical evidence of record supports the ALJ's RFC assessment of Plaintiff.

Furthermore, Plaintiff does not cite any evidence in the record to support the claim that his polyneuropathy limited his ability to work in some way unaccounted for by the ALJ's RFC and hypothetical.  While Plaintiff speculates that the RFC does not address limitations stemming from his polyneuropathy such as the ability to finger, handle, and grasp objects, Plaintiff fails to support this speculation with citations to the record or even citations to Plaintiff's own testimony.  (*See* Doc. 26 at 17).  Thus, the ALJ did not err by neglecting to tie a specific functional limitation to Plaintiff's polyneuropathy.  Accordingly, this Court finds that substantial evidence supports the ALJ's decision as to the alleged limitations from Plaintiff's polyneuropathy.  Further, because the ALJ's hypothetical question fully accounted for Plaintiff's limitations (*See* Tr. at 41-43), the VE's testimony was not harmed by the exclusion of any limitations resulting from Plaintiff's polyneuropathy.  *See Lee*, 448 F. App'x at 953.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 13, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties